(115 App. Div. 299)

## HOBSON v. KOCH.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

1. MALICIOUS PROSECUTION—PROBABLE CAUSE.

> A forged check was tendered to defendant in payment of certain goods. It was discovered that the check had been lost, and that the indorsement was a forgery. The president of the drawer called defendant's attention to the fact that the forged indorsement was similar in handwriting to that of the mail carrier who delivered letters at the drawer's place of business, whereupon an investigation was instituted by a post office inspector, who reported that the writing corresponded with that of another carrier who was a friend of the one first indicated. Defendant was requested to identify the man who presented the check, and, after looking at several carriers, announced that none of them was the man, but later identified plaintiff, who came in with a later squad of carriers. Plaintiff was also identified by certain of defendant's salespeople, both while in uniform, and while in citizens' clothes, and after the post office inspector had refused to proceed further in the matter and suggested the police department, the sergeant of the police reported that plaintiff was off duty on the day in question without assigned cause, and that no one could tell why he was absent, whereupon defendant at the sergeant's solicitation, swore out a complaint on which plaintiff was arrested. On being arrested, plaintiff stated that he could not tell where he was on the day in question, but on his preliminary examination proved an alibi, and was discharged. *Held*, that defendant had probable cause for plaintiff's arrest as a matter of law.

2. SAME—QUESTIONS OF LAW OR FACT.

Where, in an action for malicious prosecution, the facts are undisputed, the question of the existence of probable cause is one of law for the court.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Malicious Prosecution, § 161.]

Appeal from Trial Term, New York County.

Action by Benjamin W. Hobson against William T. Koch. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Reversed, and new trial granted.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

E. J. Myers, for appellant.

Herbert R. Linburg, for respondent.

HOUGHTON, J. The action is for malicious prosecution. The facts and circumstances leading to plaintiff's arrest are as follows:

On the 28th of January, 1902, at about 1 o'clock p. m., a man, whose identity is still unknown, tendered to the drygoods firm of H. C. Koch & Co., in payment for a lady's coat which he bargained for, a check of James Everard's Breweries, drawn by its president, payable to and purporting to be indorsed by J. Waitzfelder. The defendant is a member of the drygoods firm, and the saleswoman consulted him as to accepting the check, and delivering the coat and paying the difference in cash, which defendant directed to be done. Shortly afterwards it was ascertained that the check had been lost, presumably in the mail, and that the indorsement was a forgery. The defendant instituted inquiries to endeavor to ascertain who committed the larceny, and to that end consulted the officers of the drawers of the check, and the indorser, and ascertained that the check had been mailed but never delivered. The president of the brewing company called defendant's attention to the fact that the forged indorsement was similar in handwriting to that of a mail carrier who delivered letters at the brewery company's office, and suggested that the letter might have been abstracted from the mails. Defendant notified the post office department of the crime, and requested an investigation, and an inspector was detailed to investigate the matter, and a description of the man who had uttered the check was given to him. The inspector reported to defendant that the description did not correspond to the carrier on the Everard's Breweries route, but that it did correspond with the appearance of another carrier who was a friend of his, and requested that defendant come to the post office and see if he could identify the man. The defendant did so, and was given opportunity to look at several carriers, and announced that none of them was the man. On being told to wait until other carriers came in from their routes, he did so, and identified this plaintiff, who was then in his uniform. To make sure of no mistake, the defendant requested that he be permitted to see the plaintiff in citizens' clothes such as he wore on the day the check was cashed. The inspector arranged that this be done, and defendant positively identified the plaintiff. Thereupon the inspector arranged that the saleswoman and cashier who had cashed the check, should

see the various mail carriers; and they identified the plaintiff while in his uniform, and were confirmed in their identification when he was in citizens' clothes. The inspector notified the defendant that he would continue his investigation as to whether or not the letter containing the check had been abstracted from the mails. After a delay of several months the inspector informed the defendant that it was impossible for him to connect the plaintiff, or any other letter carrier or postal employé, with the cashing of the check, offering however, to submit to the police department any facts in his possession. The defendant then consulted the sergeant of police in his precinct, and laid the facts before him, and he said he would make further investigation; and finally reported to the defendant that he had found that the plaintiff was off duty on the 28th day of January, without assigned cause, and that no one could tell why he was absent, and that plaintiff was the man, and asked that defendant make complaint. This the defendant did and the plaintiff was arrested. On his arrest the officer told him that the crime charged against him was committed on the 28th day of January, and asked him where he was on that day, and plaintiff replied that he could not tell, and the officer remarked that plaintiff better find out if he wanted to clear himself from the charge.

The preliminary hearing was had, and in behalf of the people the presentation and cashing of the check, and delivery of the merchandise obtained thereon, and the forgery of the indorsement were proved, and the plaintiff was identified as the man, by the defendant and the saleswoman and cashier, and another saleswoman who was present and tried on the coat by request. In defense the plaintiff proved by himself and other witnesses that he was in attendance at the funeral of a relative in New Jersey on the day and hour in question, and he was thereupon discharged. In addition, the defendant testified that he had no personal acquaintance with plaintiff, and had no motive in charging him with the crime other than that he deemed it his duty as a citizen and as a merchant to prosecute a man who had passed a forged check and obtained money and goods thereon; and that he believed when he entered complaint, not only from his own identification, but from that of his employés, that the plaintiff was in fact the man who had committed the crime, and that he knew nothing of the plaintiff's defense of alibi until it was developed on the hearing before the magistrate.

All of the above facts were undisputed, except that the plaintiff denied that on his arrest the police officer asked him where he was on the 28th of January, and that he replied that he did not know. This occurred, however, after the complaint had been made and the warrant for plaintiff's arrest issued. On the undisputed facts existing at the time plaintiff was arrested, we think the defendant showed as matter of law that probable cause existed, and that the plaintiff's complaint should have been dismissed.

The investigation which defendant instituted was cautious and painstaking. That a crime had been committed by some one was beyond controversy. The identification of plaintiff as the man who had committed it was far from reckless. He was not pointed out as the man who was suspected, but the witnesses were compelled to pick him out

from many other letter carriers in similar uniforms. Even then, to make assurance doubly sure, the witnesses asked opportunity to see the plaintiff in citizens' clothes; and dressed in that manner, not only the defendant but his employés positively identified him. To substantiate this identification the defendant was informed by the sergeant of police that the plaintiff was off duty on the day the crime was committed, and that his superiors did not know why, or where he was. These facts constituted reasonable grounds for the prosecution of plaintiff and furnished probable cause for his arrest. "Probable cause does not necessarily depend upon the actual guilt of the person prosecuted, but may rest upon the prosecutor's belief in his guilt when based on reasonable grounds.. One may act upon what appears to be true, even if it turns out to be false, provided he believes it to be true, and the appearances are sufficient to justify the belief as reasonable." · Burt v. Smith, 181 N. Y. 1, 6, 73 N. E. 495, 496. When the facts are undisputed the question of the existence of probable cause is one of law rather than of fact for the jury. Rawson v. Leggett, 184 N. Y. 504, 77 N. E. 662.

It is urged that the fact that the post office inspector reported to the defendant that he could not connect the cashing of the check with the mail carrier suspected, or with any man connected with the post office department, showed the subsequent prosecution malicious, and without probable cause. This same inspector, inferentially, advised consulting the police force. He communicated to the defendant no new facts which tend to put him upon further inquiry or to shake his belief in his own and his employés' identification of the plaintiff. On the contrary that identification was strengthened by the report of the sergeant of police as to absence from duty of the plaintiff on the day the crime was committed. The fact that the post office department was unwilling to take action did not under the circumstances, destroy the probable cause which existed, or make defendant liable if he proceeded independently.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.