JUDSON R. KEZER, Respondent, v. DWELLE-KAISER COMPANY and Others, Appellants.

Fourth Department, December 30, 1927.

**Malicious prosecution — probable cause — action is based on three alleged acts of malicious prosecution — general verdict for plaintiff was given — material error as to one cause of action will require reversal — probable cause existed as to two of alleged prosecutions — failure of defendants to call police officers cannot be used against them — instructions — error to charge that jury might consider acquittal of plaintiff of charges made against him by defendants — issue of malice properly submitted to jury.**

The plaintiff sues to recover damages for three separate and distinct malicious prosecutions alleged to have been instituted by the defendants. The jury returned a general verdict in favor of the plaintiff, and, therefore, if material error was committed as to any one cause of action the judgment must be reversed.

Want of probable cause in each case is to be determined not upon what the plaintiff had in fact done but on the knowledge, information and opportunity for learning the facts which the defendants possessed at the time of the institution of each prosecution, and the burden of proving want of probable cause rests upon the plaintiff.

If the facts proved in reference to any one of the three alleged malicious prosecutions, when taken most favorably to the plaintiff, were not sufficient to warrant a finding of want of probable cause, it was the duty of the court to withdraw the question as to such prosecution from the jury.

As to the first alleged prosecution for grand larceny in the theft of certain brushes, want of probable cause was a question of fact, and there was no error in submitting the issues to the jury as to that cause of action.

It was error, however, for the court to submit to the jury the question of want of probable cause in reference to a charge made against the plaintiff for fraudulently secreting personal property, in selling an automobile against which the defendants held a chattel mortgage, for the chattel mortgage was unquestioned on the trial and it appeared that the plaintiff had represented to the purchaser of the automobile that he was the sole and unconditional owner. The acquittal of the plaintiff on that charge does not affect the question.

As to the third alleged malicious prosecution, there is no evidence of want of probable cause, and the court erred in submitting that question to the jury.

It was error for the court to charge that if the jury should find that two police officers were competent and material witnesses and available to the defendants, their failure to call them or to explain why they were not called, might be considered by the jury as an admission that their evidence would be against the defendants. The police officers were available to the plaintiff and no unfavorable presumption could possibly arise against the defendants for their failure to call the officers.

It was error for the court to charge that the jury might take into consideration the fact that the plaintiff was acquitted of charges brought against him by the defendants, for the element of want of probable cause is entirely distinct from

the element of favorable termination of the prosecutions on which this action is brought.

There was ample proof to warrant the submission to the jury of the issue of malice.

APPEAL by the defendants from a judgment of the Supreme Court, entered in the office of the clerk of the county of Erie on the 28th day of January, 1927.

*William C. Carroll,* for the appellants.

*John V. Maloney* [*Robert J. Summers* and *Maynard C. Schaus*], for the respondent.

SEARS, J. In the form in which this case was finally submitted to the jury, the claim of the plaintiff to recover was based solely upon the theory of three separate and distinct malicious prosecutions instituted by the defendants. All rights to a recovery based on false arrest were expressly waived.

The defendant corporation carries on the business of selling glass and paints and similar articles in the city of Buffalo and vicinity. The defendants Dwelle, Kaiser and Lownie are respectively president, secretary and treasurer of the defendant corporation. The individual defendants acted together on behalf of the corporation defendant and no distinction as to liability is claimed on the part of any one of the defendants.

The plaintiff has been twice employed by the defendant corporation; the first time, before March, 1924, as an estimator in the Buffalo office of the corporation, and the second time, from August, 1924, until the last week in April, 1925, as a salesman, having his headquarters in Jamestown, N. Y. Between these two periods of employment the plaintiff was a partner in the Niagara Mirror and Windshield Company. The partnership apparently suffered financial reverses about August, 1924. When the plaintiff re-entered the employ of the defendant corporation in August, 1924, he confessed judgment to the defendant corporation for $300 upon an account against the firm in which he had been a partner. Upon entering upon his duties as a salesman he was intrusted by the defendant corporation with a quantity of sample brushes, the value of which was charged to him on the corporation books. A Ford coupe was also turned over to him for his use. This automobile was delivered to the plaintiff by the man who had formerly held the same position in the employ of the defendant corporation in Jamestown, which the plaintiff was then filling. This man had had the car licensed in his own name, and the plaintiff on receiving the car transferred the license to his own name. However, shortly afterwards, the plaintiff signed an agreement with his employer,

the defendant corporation, for the purchase of the car at a fixed price, to secure the payment of which he gave the corporation a note together with a chattel mortgage on the car. By this agreement it was arranged that a weekly payment upon the purchase price should be made by the employer deducting the same out of the plaintiff's wages. There was in the contract between them a further provision that in case the plaintiff left the employ of the defendant corporation he was to be reimbursed for the amount of the purchase price which he had paid, and the automobile was to be returned by the plaintiff to the defendant corporation and the note and chattel mortgage canceled.

In April, 1925, plaintiff was called to the Buffalo office of his employer. He was told by the defendant Dwelle that his work was unsatisfactory and that he could no longer hold the position of salesman, but that he might have a place in the Buffalo office at a lower salary. After considering this for some hours, he told Dwelle " that I would be through, that I could not accept a job in the office; that I would turn in the property I had charged to me and get what money I had coming to me and leave their employ." The plaintiff claims that the corporation then owed him general expense money amounting to about fifty-six dollars, wages amounting to about twenty dollars and the expenses of his trip from Jamestown to Buffalo amounting to about fifteen dollars, in all about ninety-one dollars. On the other hand, only a small part of the judgment for three hundred dollars in favor of the corporation and against the plaintiff had been paid. The amount due from plaintiff to the defendant corporation exceeded the sums owing by the corporation to the plaintiff. Upon Dwelle telling the plaintiff that he would not pay him anything, an angry argument ensued. Plaintiff left Dwelle's office, but on his way out saw the defendant Kaiser, and, being asked where he was going, answered, " To Jamestown." Kaiser inquired, " You coming back? " and the plaintiff replied, " Yes." The plaintiff went to Jamestown; there he sold the Ford coupe to a man named Rozen for sixty-five dollars, making a statement to the purchaser at the time that the automobile was his property and free from lien. With a friend the plaintiff went to Washington and sought employment in that city. He gave to a prospective employer in that city the name of the Dwelle-Kaiser Company as a reference, stating his own name to be " R. J. Baumann." There had previously been in the employ of the defendant corporation a man by the name of Baumann who plaintiff knew stood well with defendants. The defendants on investigating found that Baumann was still in Buffalo and on further inquiry discovered that the man who, under

the name of Baumann, had given the name of the defendant corporation as a reference was, as matter of fact, the plaintiff. Meanwhile the defendant Kaiser had gone to Jamestown and interviewed the plaintiff's wife about the brushes which the plaintiff had had in his possession. The plaintiff on the day that he left the employ of the defendant corporation had said that the property which was charged to him was " at my home in Jamestown." Kaiser received from the plaintiff's wife part of the brushes which were charged to the plaintiff on the corporation's books. Kaiser obtained these at the place where plaintiff had resided. After crediting to the plaintiff the brushes thus received, a balance of sixty-nine dollars worth of brushes still remained unaccounted for.

The first prosecution was instituted by the defendants on the 5th day of May, 1925. The defendant Lownie, acting as an officer of the defendant corporation, after consulting with the other individual defendants, but without making further investigation as to the whereabouts of the remaining brushes than already stated, on that day laid an information before a judge of the City Court of Buffalo, charging the plaintiff with grand larceny in the theft of the balance of the brushes. A warrant was issued on this information and the plaintiff was arrested on the seventh day of May, in Washington, by the local police on telegraphic information from the Buffalo police. On the evening of the same day he was released. The Washington police had then received a telegram from the Buffalo police to the effect that the complainant refused to prosecute. The matter of the alleged theft of the brushes was taken before the grand jury of Erie county, but about this time a very considerable number of other brushes were discovered by the defendants in Jamestown, partly at a garage where the plaintiff had been accustomed to keep his automobile and partly in the Ford automobile which was in the hands of Rozen. Plaintiff's wife seems to have been helpful to the defendants in the discovery of this property. The grand jury failed to indict.

The plaintiff claims a second prosecution was then begun. This was on the 8th day of June, 1925. The plaintiff had returned to Buffalo and on that day was arrested by two officers of the Buffalo police force, named O'Leary and Flynn, who, on arresting him, did not tell him the cause of arrest but did say that Mr. Dwelle wanted to see him. The plaintiff was then forcibly taken to the defendant Dwelle's office and Dwelle said to the plaintiff, among other things, " You have gone and sold our car, so you got yourself in a hell of a scrape * * *. I have spent a hell of a lot of money to get you here and I am going to railroad

23

you to hell   *   *   *.   We released you in Washington and you came right back here in our hands again and now we have got you." Dwelle told the officers to take the plaintiff and lock him up. Plaintiff was released on bail, and on the 2d day of July, 1925, was discharged, presumably for failure of prosecution.

The last prosecution had its beginning on June 23, 1925, when the defendant Lownie filed an information with the City Court of Jamestown, charging the plaintiff with the commission of the crime of fraudulently secreting personal property, specified in section 940 of the Penal Law, in selling the Ford automobile with intent to defraud the defendant corporation, the mortgagee. The plaintiff gave bail. He was brought to trial on this charge and on the 15th day of July, 1925, he was acquitted.

The foregoing is but a skeleton statement of the more important facts contained in a voluminous record. Several minor incidents not controlling here are entirely omitted. The facts stated are either undisputed or in accordance with the plaintiff's evidence.

All of the causes of action were submitted together and a general verdict taken. The damages cannot now be separated. We do not know on which causes of action the verdict is based. Material error as to any one must, therefore, result in a reversal.

The principal questions are as to the want of probable cause as to each prosecution. Want of probable cause in each instance is to be determined not upon what the plaintiff had in fact done or had not done, but on the knowledge, information and opportunity for learning the facts which the defendants possessed at the time of the institution of the prosecution. The defendants were entitled to act upon what they believed to be the facts in instituting a prosecution, if the appearances were sufficient reasonably to justify their belief. (*Burt* v. *Smith*, 181 N. Y. 1.) If the defendants had knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he had lawful grounds for prosecuting the plaintiff in the manner complained of, probable cause was present and an action would not lie. (*Rawson* v. *Leggett*, 184 N. Y. 504.) The burden was upon the plaintiff to prove want of probable cause. If the facts proved in any one of the three instances when taken most favorably to the plaintiff, are not sufficient to warrant a finding of want of probable cause, it was the duty of the court to withdraw the question as to such prosecution from the jury. (*Fagnan* v. *Knox*, 66 N. Y. 525.)

As to the first prosecution for grand larceny in the theft of the brushes want of probable cause was a question of fact. The jury might have found under the evidence that the defendants in view of all the circumstances were not warranted in acting upon the

belief that the plaintiff intended to appropriate to his own use the missing brushes; that the defendants had not exhausted the means of investigation at their command at the time that action was taken by them; that the facts known to them were not sufficient to justify a reasonable belief in the plaintiff's guilt. As to this prosecution we think there was no error in submitting the issues to the jury.

As to the last prosecution instituted in the City Court of Jamestown for fraudulently secreting personal property in selling the automobile there is a complete failure of proof of want of probable cause. All the facts in that case were known to the defendants at the time the prosecution was started. The chattel mortgage is unquestioned; the lien of the mortgage was unaffected. The refusal by Dwelle to pay to the plaintiff the sums which the plaintiff had earned as wages or to reimburse him for expenses incurred in nowise affected the chattel mortgage held by the defendant corporation as a lien upon the car. The plaintiff was required to deliver the car to the corporation to entitle the plaintiff to insist upon repayment of the amounts paid on the automobile and the cancellation of the chattel mortgage under the contract between himself and the defendant corporation entered into when the chattel mortgage was given. This he failed to do. On the contrary, he falsely stated that the automobile was not incumbered and sold it to Rozen as his own. The acquittal of the plaintiff in the City Court of Jamestown does not affect the matter. The submission to the jury of this prosecution as a cause of action was error.

The plaintiff contends that a second prosecution began with the arrest of the plaintiff at Buffalo on June 8, 1925. The evidence is not clear as to this arrest. If, as is intimated by numerous questions, but not established by the answers, the arrest was upon the warrant resulting from the information filed May fifth, it was not a prosecution separate from the first. If the arrest was on a charge growing out of the automobile transaction in Jamestown, the element of want of probable cause was lacking just as it was lacking in respect to the prosecution in Jamestown. The illegality of the arrest is immaterial, for, as has been pointed out, all claims for damages for false arrest were expressly waived by the plaintiff. The evidence failed to make a *prima facie* case of malicious prosecution in this instance.

At the close of the main charge to the jury, at the request of the plaintiff's counsel, the learned trial judge charged the jury as follows: " If the jury find that officers O'Leary and Flynn were competent and material witnesses and available to the defend-

ants and they did not call them in explanation of any material fact which the jury find they may have known of, the jury may find that their evidence would be against the defendants." O'Leary and Flynn were the officers who arrested the plaintiff in Buffalo on June 8, 1925, and brought him to the defendant Dwelle. They were not employees of the defendants. They were police officers of the city of Buffalo. The failure to call such witnesses could raise no presumption of law or fact against the defendants. (*Hayden* v. *New York Rys. Co.*, 233 N. Y. 34; *Perlman* v. *Shanck*, 192 App. Div. 179.) It was as open to the plaintiff as to the defendants to call them. The jury should not have been permitted to speculate on what their testimony would have been. The failure to call a witness does not fill a gap in an adversary's case. The failure to call a witness at most is only to be considered as bearing upon evidence actually produced.

The learned trial court also charged, in response to a request of plaintiff's counsel, " that where a man is acquitted of the charge, * * * the jury may take that into consideration for what it is worth, as bearing on the probable cause." This charge might not alone be important, but as we are granting a new trial it may be well to say that in an action for malicious prosecution, the essential element of want of probable cause is distinct from the element of favorable termination. The two elements have different foundations: Want of probable cause rests on the defendant's knowledge, information and belief; favorable termination rests on the actual conduct of the plaintiff. Favorable termination has no bearing whatever in and of itself on want of probable cause, although, of course, a fundamental situation which has brought about successful termination of the prosecution, if shown to have been known to the prosecutor at the time of instituting the prosecution, may also be sufficient to establish an absence of probable cause. The charge was, therefore, erroneous.

There was ample proof to warrant the submission to the jury of the issue of malice.

The judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

All concur. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.